PHILIP M. RAFIY, M.D., INDIVIDUALLY, AND
LONG ISLAND SPINE & ORTHOPEDICS, P.C.,

Plaintiffs,

VERSUS

THE COUNTY OF NASSAU, ET AL.,

Defendants.
_____

**MEMORANDUM AND ORDER**
January 4, 2017
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs Phillip Rafiy, M.D. ("Dr. Rafiy") and Long Island Spine & Orthopedics, P.C. ("LISO") (collectively, "plaintiffs") bring this action pursuant to 42 U.S.C. §§ 1983 and 1985 ("Section 1983" and "Section 1985") and various New York state tort claims against defendants The County of Nassau, the Nassau County District Attorney, Former District Attorney Kathleen Rice, Andrew Weiss, William Walsh, and Diane Peress (collectively, the "County Defendants"); National Government Services, Inc. ("NGS" or "defendant"); Emblem Health, Inc./Group Health Incorporated ("Emblem"); United Healthcare ("United"); Empire Blue Cross Blue Shield ("Empire"); and several Jane and John Doe Assistant District Attorneys and police officers, as well as other unknown entities or individuals.

Defendants NGS, Emblem, United, and Empire moved to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b), and after the motions were fully submitted and the Court held oral argument, plaintiffs stipulated to dismissal without prejudice of their claims against Emblem, United, and Empire. Accordingly, the Court considers only NGS's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim.

For the reasons set forth below, defendant's motion is granted in full. As a threshold matter, the Court finds that NGS is an entity of the federal government. With respect to the individual claims, the Court holds that: (1) plaintiffs' claim under Section 1983 is not applicable to the federal government and, because NGS is a Medicare administrative contractor and is therefore considered an agent of the Secretary of Health and Human Services, any Section

1

1983 claim against NGS must be dismissed; (2) plaintiffs' *Bivens* claim against NGS must be dismissed because sovereign immunity bars suits against federal agencies; (3) the Section 1985 conspiracy claim against NGS must be dismissed because medical doctors are not a protected class under the statute; (4) the complaint must be dismissed because NGS is entitled to official immunity for acts taken in its capacity as a Medicare contractor; and (5) the state tort claims against NGS must be dismissed because plaintiffs failed to file an administrative claim with the Department of Health and Human Services under the Federal Tort Claims Act prior to filing the instant action. In addition, the Court denies plaintiffs leave to replead because the defects in their claims are substantive in nature.

I. BACKGROUND

A. Facts

The following facts are taken from the complaint, and the Court limits its analysis to those facts that pertain to NGS. The Court assumes them to be true for the purpose of deciding this motion and construes them in the light most favorable to plaintiffs as the non-moving party.

On or about November 6, 2013, Dr. Rafiy was indicted in New York state court on three counts of Grand Larceny and seven counts of Falsifying Business Records. (Compl., ECF No. 1, ¶ 81.) Count 1 of the indictment alleged theft of $14,899.17 from NGS. (*Id.* ¶¶ 73, 81.) Following a jury trial, Dr. Rafiy was acquitted of all charges on November 13, 2014. (*Id.* ¶ 104.)[1] Dr. Rafiy alleges that the County Defendants conspired to violate his constitutional and state law rights, as well as those of his business LISO, in connection with that prosecution. (*Id.* ¶ 80; *see also generally id.* ¶¶ 1-7.)

NGS is a New York corporation that conducts business with medical providers and patients and administers Medicare programs, payments, and services. (*Id.* ¶¶ 45-46.) Plaintiffs claim that NGS[2] "act[ed] at the behest of" the County Defendants and thereby "became a party to the concerted effort along with the other Defendants to deprive and the violate of [sic] Plaintiffs' constitutional rights, as well as state and common law rights." (*Id.* ¶ 47; *see also id.* at ¶¶ 123-24.) Specifically, plaintiffs contend that NGS "intentionally and selectively submitted documentation— without the corresponding exculpatory material—in order to violate Plaintiffs' constitutional and state law rights for the sole purpose of securing a guilty verdict." (*Id.* ¶ 101; *see also id.* ¶¶ 151-52 (alleging that NGS "acted with actual malice" and "maliciously promoted the criminal prosecution and took an active role in launching the criminal investigation and action against the Plaintiffs").)

Accordingly, plaintiffs allege that defendant violated 42 U.S.C. §§ 1983 and 1985 and also assert various New York state law claims against NGS. (*Id.* at 29-41.)

B. Procedural History

Plaintiffs commenced this action on November 12, 2015. (ECF No. 1.) On April 28, 2016, NGS filed its motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim

---

[1] The Complaint states that only Dr. Rafiy was indicted, but that both plaintiffs were acquitted of all charges. (*Id.* ¶¶ 81, 104.) Accordingly, it is unclear whether LISO was also prosecuted.

[2] Plaintiffs also appear to refer to NGS alternatively as "MEDICARE" in their complaint. (*See, e.g.*, *id.* ¶¶ 73 81, 83.)

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 51.) Plaintiffs submitted their opposition on June 15, 2016 (ECF No. 67), and defendant filed its reply on June 30, 2016 (ECF No. 70). The Court held oral argument on July 7, 2016 (ECF No. 74) and has carefully considered the parties' submissions.[3]

II. STANDARD OF REVIEW

Relevant here are Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), which respectively govern motions to dismiss for lack of subject matter jurisdiction and motions to dismiss for failure to state a claim. The following standards of review are applicable to motions brought under these provisions.

A. Subject Matter Jurisdiction

When a court reviews a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). The burden of proving subject matter jurisdiction by a preponderance of the evidence is on the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings" to resolve the jurisdictional issue, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)), but a court "may not rely on conclusory or hearsay statements contained in the affidavits," *Attica Cent. Sch.*, 386 F.3d at 110.

B. Failure to State a Claim

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,* 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth two principles for a district court to follow in deciding a motion to dismiss. 556 U.S. 662 (2009). First, district courts must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

---

[3] As noted, Emblem, United, and Empire also moved to dismiss the complaint (*see* ECF Nos. 55, 56, and 60), but following oral argument, plaintiffs stipulated to dismissal without prejudice of their claims against those parties, which the Court so ordered on August 15, 2016 (ECF No. 78).

## III. Discussion

Defendant argues that plaintiffs' claims against must be dismissed for the following reasons: (1) this Court lacks subject matter jurisdiction with respect to plaintiffs' 42 U.S.C. § 1983 cause of action because NGS is a federal governmental entity and is therefore not subject to Section 1983 claims; (2) NGS is entitled to official immunity; (3) plaintiffs have failed to adequately state a conspiracy claim pursuant to 42 U.S.C. § 1985; and (4) plaintiffs have failed to administratively exhaust their state law tort claims. For the reasons set forth below, defendant's motion is granted in full.

### A. NGS's Relationship to the Federal Government

#### 1. Applicable Law

The Medicare Act, 42 U.S.C. §§ 1395 *et seq.*, authorizes the Secretary of Health and Human Services ("HHS") to "enter into contracts with any eligible entity to serve as a medicare administrative contractor [("MAC")] with respect to the performance of" certain functions, such as payment services, *id*. § 1395kk-1(a)(1). The Centers for Medicare and Medicaid Services ("CMS") is "the federal agency situated within [HHS] that administers the Medicare program on behalf of the Secretary of HHS," *Estate of Landers v. Leavitt*, 545 F.3d 98, 103 (2d Cir. 2008), *as revised* (Jan. 15, 2009) (footnoted omitted), and because MACs "act on behalf of CMS" with respect to Medicare administration, "CMS is the real party of interest in any litigation involving the administration of the program" by a MAC. 42 C.F.R. § 421.5(b).[4]

#### 2. Analysis

Defendant argues that "NGS is a Medicare Administrative Contractor ('MAC'), contracted with the Centers for Medicare and Medicaid Services ('CMS'), which is a component of the Department of Health and Human Service ('HHS')." (Mem. of Law in Supp. of Def. NGS's Mot. to Dismiss ("Def.'s Br."), ECF No. 52, at 1.) Accordingly, defendant contends that CMS and, by extension, HHS are the real parties in interest with respect to plaintiffs' claims against NGS, and that plaintiffs' suit is therefore against the federal government. (*Id*. at 3-5.)

Plaintiffs acknowledge in their complaint that NGS is a corporation that "administers Medicare programs, payments and services to medical providers and patients in the State of New York . . . ." (Compl. ¶¶ 45-46.) Nevertheless, they argue that "NGS has failed to affirmatively establish that it is in fact a 'federal officer' or 'agency' and its obligation to competently do so cannot be waived." (Pls.' Mem. of Law in Opp'n to the Mot. to Dismiss ("Pls.' Br."), ECF No. 67, at 12.) Similarly, at oral argument, plaintiffs conceded that defendant is a Medicare contractor but claimed that such status does not mean that NGS is a federal entity. In addition, plaintiffs assert in their brief that "[t]here is no basis for this Court to take judicial notice of" NGS's relationship to the federal government. (*Id*. at 6.)

However, it is axiomatic that a court may take judicial notice of relevant law and administrative regulations, either at the request of a party or *sua sponte*, including on

---

[4] This regulation refers to indemnification of Medicare "intermediaries" and "carriers" rather than contractors, *id*., but "on or after October 1, 2005, any reference to an 'intermediary' or 'carrier' in a regulation shall be deemed a reference to a MAC," Medicare Program, 71 Fed. Reg. 67960, 68181 (Nov. 24, 2006).

4

a motion to dismiss. *See, e.g.*, *Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) ("Although there may be some question about whether it was proper to consider this affidavit on the motion to dismiss without giving plaintiff the opportunity to submit counteraffidavits, it was proper for the court to take judicial notice of these regulations."); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *4 (E.D.N.Y. Aug. 29, 2013) ("A district court may consider matters of which judicial notice may be taken without converting a motion to dismiss into one for summary judgment." (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)) (taking judicial notice of the Federal Register and Code of Federal Regulations); *United States v. Knauer*, 635 F. Supp. 2d 203, 206 n.2 (E.D.N.Y. 2009) ("[I]t is long established that courts may take judicial notice of the rules and regulations of an administrative agency . . . .").

Accordingly, the Court concludes, based on the undisputed fact that NGS is a Medicare contractor charged with administering Medicare functions and pursuant to the relevant statutory and regulatory framework discussed above, that CMS—and HHS by extension—is the "real party of interest" in this litigation, 42 C.F.R. § 421.5(b), which arises from Dr. Rafiy's prosecution for, *inter alia*, alleged theft from "defendant National Government Service, Inc. ('MEDICARE')" based on alleged "double billing" (Compl. ¶¶ 73, 83-84).

B. Section 1983

To maintain a claim under 42 U.S.C. § 1983, a plaintiff must allege that an individual deprived him of his constitutional rights while acting under color of *state* law. *See Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 271 (2d Cir. 1999); *Young v. Suffolk Cty.*, 922 F. Supp. 2d 368, 385 (E.D.N.Y. 2013). Thus, "[a]n action brought pursuant to 42 U.S.C. § 1983 cannot lie against federal officers." *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 n.4 (2d Cir. 1991); *see also Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005) ("This court has long construed the phrase 'under color of state law' as used in related civil rights statutes, notably 42 U.S.C. § 1983, to apply only to state actors, not federal officials.").

Here, the Court has determined that CMS—a federal agency—is the real party in interest in this litigation, which arises from NGS's administration of Medicare programs and services. As a result, plaintiffs cannot state a Section 1983 claim because NGS acted under color of federal, rather than state, law. Accordingly, all of plaintiffs' 42 U.S.C. § 1983 claims against NGS are dismissed.[5]

C. Section 1985

To sustain a Section 1985 claim for conspiracy to deprive an individual of his federal civil rights, a plaintiff must show, *inter alia*, that the conspiracy was "motivated by 'some racial or perhaps otherwise class-

---

[5] To the extent that the complaint can be construed to assert *Bivens* claims for deprivation of constitutional rights by a federal actor, *see Megna v. Food & Drug Admin.*, No. 08-CV-1435 (JFB) (WDW), 2009 WL 749900, at *4 (E.D.N.Y. Mar. 17, 2009) (citing *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)), *aff'd sub nom. Megna ex rel. Megna v. Food & Drug Admin.*, 377 F. App'x 113 (2d Cir. 2010), such claims fail because the *Bivens* doctrine authorizes suits against individuals, and not the United States or federal agencies like CMS and HHS, *see F.D.I.C. v. Meyer*, 510 U.S. 471, 484-86 (1994). Thus, plaintiff cannot assert a *Bivens* claim against NGS because sovereign immunity bars civil rights suits against federal agencies.

based, invidious discriminatory animus behind the conspirators' action.'" *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (quoting *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 829 (1983)). Plaintiffs have not stated a plausible claim here because their complaint does not allege discrimination based on a protected class. They argue that NGS, in concert with the County Defendants, targeted plaintiffs due to their "high public standing" as members of the "elite" (Pls.' Br. at 19), but do not point to any authority holding that medical doctors or other professionals qualify as a protected class under Section 1985, and the Court concludes that no such protected class exists under the law. The Court accordingly finds that plaintiffs have failed to adequately plead a claim under that statute. *See Brito v. Arthur*, 403 F. App'x 620, 621 (2d Cir. 2010) ("Aside from conclusory assertions, Appellant failed to provide any factual allegations that Appellees engaged in a conspiracy, or that they were motivated by unlawful discriminatory intent or animus.").

D. Official Immunity

"The doctrine of official immunity is designed to promote the effective administration of government affairs by ensuring that government officials are 'free to exercise their duties unembarrassed by the fear of damage suits.'" *Murray v. Northrop Grumman Info. Tech., Inc.*, 444 F.3d 169, 174 (2d Cir. 2006) (quoting *Barr v. Matteo,* 360 U.S. 564, 571 (1959)). In *Pani v. Empire Blue Cross Blue Shield*, the Second Circuit extended official immunity to a Medicare contractor in a suit that contested the contractor's reporting of alleged Medicare fraud to law enforcement because "[t]he policy considerations underlying the extension of official immunity to a federal official's duty to investigate and report suspected fraud apply with equal force to a fiscal intermediary or carrier." 152 F.3d 67, 73 (2d Cir. 1998). The Court further noted that the "carriers and fiscal intermediaries that administer the millions of Medicare claims filed annually are indispensable components of the governmental program and are in a unique position to combat the drain on public resources caused by fraudulent claims." *Id*.

Accordingly, NGS is also entitled to official immunity with respect to all of plaintiffs' claims against it because, as a Medicare contractor, defendant was "acting pursuant to the requisite degree of generalized government authorization inasmuch as [it was] approved as fiscal intermediaries under the Medicare program." *Grp. Health Inc. v. Blue Cross Ass'n*, 739 F. Supp. 921, 932 (S.D.N.Y. 1990). To the extent that Dr. Rafiy's prosecution stemmed from alleged Medicare fraud, *Pani* determined that such conduct is immune from suit because the "investigation and reporting of possible Medicare fraud is precisely the type of delegated discretionary function that the public interest requires to be protected by immunity."[6] 152 F.3d at 73; *see also S. Rehab. Grp., P.L.L.C. v. Sec'y of*

---

[6] Plaintiffs err in relying on *Rochester Methodist Hospital v. Travelers Insurance Company*, 728 F.2d 1006 (8th Cir. 1984), for the proposition that NGS is not entitled to immunity because it acted beyond the scope of its authority by "engag[ing] in acts that both undermined and exceeded [its] respective authority and obligations." (Pls.' Br. at 17-18.) As the Second Circuit noted in *Pani*, *Rochester* dealt with sovereign, rather than official, immunity and was thus inapposite. 152 F.3d at 73. So, too, is *Rochester* inapplicable here, and the Eighth Circuit has separately held in a decision pre-dating *Rochester* that "[i]t is well settled that Medicare intermediaries and carriers can be governmental agents for immunity purposes" and that "official status should be extended to . . . a consultant to a Medicare carrier." *Bushman v. Seiler*, 755 F.2d 653, 655 (8th Cir. 1985).

6

*Health & Human Servs.*, 732 F.3d 670, 680 n.7 (6th Cir. 2013) (collecting official immunity cases). Thus, all of plaintiffs' claims must be dismissed based on the doctrine of official immunity.

E. Exhaustion

Finally, NGS argues that plaintiffs' New York state law tort claims must be dismissed for failure to exhaust administrative remedies, as required by the Federal Tort Claims Act ("FTCA"), which provides that an

> action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).

1. Applicable Law

Pursuant to the FTCA, district courts have

> exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). By enacting the FTCA, Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees. *See id.* "The waiver of sovereign immunity under the FTCA, 28 U.S.C. § 1346(b), is strictly limited to suits predicated upon a tort cause of action cognizable under state law and brought in accordance with the provisions of the FTCA," *Finelli v. Drug Enforcement Agency*, No. 92 Civ. 3463 (PKL), 1993 WL 51105, at *5 (S.D.N.Y. Feb. 24, 1993), and this constitutes the exclusive remedy for torts committed by federal employees in the course of their duties, *see, e.g., James v. U.S.*, No. 99 Civ. 4238 (BSJ), 2000 WL 1132035, at *1 (S.D.N.Y. Aug. 8, 2000); *Olmeda v. Babbits*, No. 07 Civ. 2140 (NRB), 2008 WL 282122, at *5 (S.D.N.Y. Jan. 25, 2008); *Finelli*, 1993 WL 51105, at *1 ("While this provision does not apply to suits for violation of federal constitutional or statutory rights, it is well settled that it does provide Government employees with absolute immunity against claims of common-law tort." (citing *Rivera v. United States*, 928 F.2d 592, 608 (2d Cir. 1991))).

The Supreme Court has clearly stated, in interpreting the statutory text of the FTCA, that "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993). Specifically, the FTCA requires that claimants first present their claims to the appropriate federal agency within two years of accrual, and their claims must be denied in writing before claimants may file suit in

federal court. *See* 28 U.S.C. §§ 2401(b), 2675(a). "The administrative exhaustion requirement derives from a cardinal principle of law—that the United States, as sovereign, is immune from suits in the courts of law." *Mosseri v. F.D.I.C.*, Nos. 95 Civ. 723 (BJS), 97 Civ. 969 (BSJ), 1999 WL 694289, at *7 (S.D.N.Y. Sept. 8, 1999). Failure to comply with this requirement results in dismissal of the suit. *See McNeil*, 508 U.S. at 113 ("The FTCA bars claimants from bringing suits in federal court until they have exhausted their administrative remedies. Because petitioner has failed to heed that clear statutory command, the District Court properly dismissed his suit."); *see also Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in district court. This requirement is jurisdictional and cannot be waived.").

2. Analysis

In the instant case, the Court has determined that CMS—and by extension HHS—is the real party in interest in this litigation, and plaintiffs have failed to exhaust their tort claims within that agency, as required by the FTCA. As the declaration of HHS attorney Kara Hicks states, no administrative tort claim with respect to plaintiffs has previously been presented to HHS.[7] (Decl. of Kara Hicks, ECF No. 54, ¶ 5.) Accordingly, the Court lacks jurisdiction over plaintiffs' state law tort claims.

F. Leave to Amend

In the event of dismissal, plaintiffs request an opportunity to amend their complaint to cure any deficiencies. (Pls.' Br. at 22.) "Leave to amend, though liberally granted, may properly be denied for: undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (citation omitted). Here, the deficiencies in plaintiffs' claims are substantive in nature and, as such, cannot be remedied by amendment. Accordingly, the Court declines to grant plaintiffs leave to file an amended complaint.

IV. CONCLUSION

For the foregoing reasons, defendant NGS's motion to dismiss (ECF No. 51) is granted in full for lack of subject matter jurisdiction and for failure to state a claim. Accordingly, plaintiffs' claims against NGS are dismissed with prejudice.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 4, 2017
Central Islip, NY

---

[7] As noted *supra*, when considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. *See, e.g.*, *Makarova,* 201 F.3d at 113.

*\*\**

Plaintiffs are represented by Michael G. Levin of Levin & Chetkof LLP, 265 Post Avenue, Suite 290, Westbury, New York 11590. Defendant National Government Services, Inc. is represented by Diane C. Leonardo-Beckmann, Assistant United States Attorney, on behalf of Robert L. Capers, United States Attorney, Eastern District of New York, 610 Federal Plaza, 5th Floor, Central Islip, New York 11722.