```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
PHILIP M. RAFIY, M.D.,

                        Plaintiff,
                                                              REPORT &
                                                              RECOMMENDATION
            -against-                                         15-CV-6497 (SJF) (GRB)

THE COUNTY OF NASSAU, et al.

                        Defendants.
----------------------------------------------------------X
```

**GARY R. BROWN, United States Magistrate Judge:**

Before the undersigned upon referral by the Honorable Sandra J. Feuerstein, United States District Judge, is a motion for summary judgment by defendants the County of Nassau, Nassau County District Attorney, Former District Attorney Kathleen Rice ("DA Rice") individually and in her "former official capacity," Andrew Weiss ("ADA Weiss") and Diane Peress ("ADA Peress") individually and in their official capacities as Assistant District Attorneys, and William Walsh ("Investigator Walsh" or "Walsh") individually and in his official capacities as an investigator in the Office of the District Attorney (collectively "the County Defendants"). For the reasons set forth herein, it is respectfully recommended that summary judgment be GRANTED as to the federal claims, and the Court decline supplemental jurisdiction over the state law claims.

## PROCEDURAL HISTORY

This action was commenced by the filing of a complaint on November 12, 2015. Docket Entry ("DE") 1. In deciding the motions to dismiss, Judge Bianco summarized the Complaint as follows:

> On or about November 6, 2013, Dr. Rafiy was indicted in New York state court on three counts of Grand Larceny and seven counts of Falsifying Business Records.

1

> (Compl., ECF No. 1, ¶ 81.) Count 1 of the indictment alleged theft of $14,899.17 from NGS. (*Id.* ¶¶ 73, 81.) Following a jury trial, Dr. Rafiy was acquitted of all charges on November 13, 2014. (*Id.* ¶ 104.) . . . Dr. Rafiy alleges that the County Defendants conspired to violate his constitutional and state law rights, as well as those of his business [Long Island Spine & Orthopedics, P.C. ("LISO")], in connection with that prosecution. (*Id.* ¶ 80; *see also generally id.* ¶¶ 1-7.)
>
> [National Government Services, Inc. ("NGS")] is a New York corporation that conducts business with medical providers and patients and administers Medicare programs, payments, and services. (*Id.* ¶¶ 45-46.) Plaintiffs claim that NGS . . . "act[ed] at the behest of" the County Defendants and thereby "became a party to the concerted effort along with the other Defendants to deprive and the violate of [sic] Plaintiffs' constitutional rights, as well as state and common law rights." (*Id.* ¶ 47; *see also id.* at ¶¶ 123-24.) Specifically, plaintiffs contend that NGS "intentionally and selectively submitted documentation—without the corresponding exculpatory material—in order to violate Plaintiffs' constitutional and state law rights for the sole purpose of securing a guilty verdict." (*Id.* ¶ 101; *see also id.* ¶¶ 151-52 (alleging that NGS "acted with actual malice" and "maliciously promoted the criminal prosecution and took an active role in launching the criminal investigation and action against the Plaintiffs").)
>
> Accordingly, plaintiffs allege that defendant violated 42 U.S.C. §§ 1983 and 1985 and also assert various New York state law claims against NGS. (*Id.* at 29-41.)

DE 79 at 2. Based on those allegations, the Complaint purports to assert eleven causes of action against the County Defendants: (1) violation of plaintiff's rights under the First, Fourth and Fourteenth Amendments under 28 U.S.C. § 1983; (2) abuse of process and conspiracy under 28 U.S.C. §§ 1983 and 1985 arising from defendants arrest and detention; (3) conspiracy under 28 U.S.C. §§ 1983 and 1985 in connection with the grand jury presentation; (4) conspiracy to obstruct justice under 28 U.S.C. §§ 1983 and 1985 in connection with the grand jury presentation and plaintiff's arrest and detention; (5) submission of altered and incomplete evidence to the grand jury in violation of plaintiff's constitutional rights[1]; and the following state law claims asserted under pendent jurisdiction: (6) abuse of process; (7) malicious prosecution; (8) intentional infliction of emotional distress; (9) negligent infliction of emotional distress; (10) false

---

[1] Though not briefed by the parties, Count Five does not invoke §§ 1983 or 1985.

arrest; and (11) New York Constitutional Tort; and (12) false imprisonment and restraint.[2]  DE 1.

The County Defendants filed an answer on February 18, 2016 and an amended answer on October 20, 2017.  Pl.'s 56.1 Counterstatement ¶¶ 6-7, DE 118.

## FACTS

The undisputed facts include the following:

On October 11, 2011, the New York State Workers' Compensation Board, Office of the Fraud Inspector General ("OIG") made a referral to Nassau County District Attorney's Office ("DA's Office"), based on an investigation of the plaintiff.  Pl.'s 56.1 Counterstatement ¶ 27.  As part of that referral, OIG provided the DA's Office with a binder of documents summarizing its investigation.  *Id.* at ¶ 28.  Accompanying that binder was a cover letter providing as follows:

> We are referring the above-referenced case to your office for criminal prosecution for violations of the Workers' Compensation Law, Section 114 (1) (Fraudulent Practices) and the New York State Penal Law, Sections 155.35 (Grand Larceny in the Third Degree), 176.20 (Insurance Fraud in the Third Degree), 175.10 (Falsifying Business Records in the First Degree) and 175.35 (Offering a False Instrument for Filing in the First Degree) and for such other charges as you may deem appropriate. Dr. Philip Michael Rafiy (Rafiy) is an orthopedic surgeon with a practice that he owns at Long Island Spine & Orthopedics, 87 W. Old Country Road, in Hicksville, N.Y. 11801.  These suggested charges arise as a result of Rafiy's fraudulently misrepresenting the nature of surgeries that he performed in order to bill twice for their payment.  In addition to fraudulent surgical billing, Rafiy also double-billed for standard office visits and routine medical procedures as a result of which he stole approximately $50,000 from different insurance carriers.

*Id.* at ¶ 29.

---

[2] Somewhat surprisingly, in the complaint, plaintiff asserts that "Defendants intentionally imprisoned/restrained/confined Plaintiff . . . for more than one (1) year."  DE 1 at 40.  As noted herein, however, on this motion, the undisputed facts suggest that plaintiff was incarcerated for one day.  Armed with this knowledge, a reader could deduce from the complaint that the one year period refers to the time during which plaintiff's passport was surrendered, rather than a period during which plaintiff languished in jail.  This is, of course, a significant difference.

3

After receiving the binder from OIG, the DA's Office Economic Crimes Bureau opened an investigation into Dr. Rafiy's billing practices and ADA Weiss, a defendant herein, was assigned to supervise the investigation and prosecute any substantiated criminal conduct. *Id.* at ¶ 30. From October 11, 2011 to April 18, 2013, the date of Dr. Rafiy's arrest, the Economic Crimes Bureau investigated Dr. Rafiy for alleged double billing. *Id.* at ¶ 31. This investigation continued through the time of trial. *Id.* ADA Weiss, during the course of the investigation, gathered information from the Workers' Compensation Board, banks where Dr. Rafiy maintained his accounts, and from various insurance companies (and "third party administrators" where appropriate), among other places. *Id.* at ¶ 36.

Investigator Walsh, as part of his role in the investigation, reviewed invoices, medical claim forms, bills to Workers' Compensation Carriers, bills to private insurance companies, certain treatment records, and interviewed certain patients of Dr. Rafiy. Investigator Walsh also interviewed Dr. Rafiy. *Id.* at ¶ 32. One of the patients interviewed by Walsh testified that, during the interview, Walsh made several troubling statements including that the "DA's office was out to get Dr. Rafiy," "[Walsh] wanted to lock him up," "[Walsh] wanted to take his license away," and that "Dr. Rafiy was a drug pusher," though Walsh could not recall making such statements. *Id.* at ¶ 35.

As part of the investigation, the DA's Office obtained information from a large number of state, federal and local agencies and insurance companies. *Id.* at ¶ 37. During his investigation of the allegations, ADA Weiss searched paper and electronic records for duplicate instances of (1) patient name; (2) patient pedigree; (3) diagnosis code; (4) treatment code; and (5) date; although plaintiff identifies purported limitations of his methodology. *Id.* at ¶¶ 38-39. The investigation continued for seventeen months, at which point ADA Weiss prepared an Arrest Memo seeking

4

authorization to arrest Dr. Rafiy. *Id.* at ¶ 40. The Arrest Memo, which was provided to ADA Peress, contained a description of the investigation and a chart of payments from the insurance carriers and payments from Workers' Compensation. *Id.* at ¶¶ 42-44. The arrest was authorized, but prior to effecting the plaintiff's arrest, the DA's Office interviewed the plaintiff and obtained record via subpoena from his business. *Id.* at ¶¶ 45-48. The parties dispute the contents of the interview. *Id.* at ¶ 49; *see also* Rafiy Decl. ¶¶ 10-11, DE 117-4.

In the criminal prosecution of the plaintiff, the County provided a notice of intention to offer Dr. Rafiy's statement at trial in which it summarized the contents of his interview as follows:

> [Dr. Rafiy] stated that, for certain patients, he submitted claim forms for payment to the Workers Compensation Board (WCB) and the patient's private health insurance, thereby billing two separate entities for the same medical services. The defendant stated that he did this because WCB would challenge his billing and he needed to submit to the private insurance within 45-60 days (depending on insurance company) in order to protect his ability to be paid from someone. The defendant further stated that he refunded the money paid by the private health insurance upon learning that he had been paid by WCB.

DE 114-22. The trial court denied both a motion to suppress this statement, and a motion for dismissal, noting that plaintiff "has not advanced any substantial reason to dismiss the instant indictment." Jones Decl. Ex. 14, DE 114-14; Pl.'s 56.1 Counterstatement ¶ 52.

Officials within the DA's Office authorized the arrest and Walsh executed a 13-count felony complaint. Pl.'s 56.1 Counterstatement ¶¶ 54-55. Plaintiff was arrested and detained for a day. *Id.* at ¶ 62. Subsequent to his arrest, ADA Weiss met with Stephen Scaring, plaintiff's defense attorney, to discuss the case and review purportedly exculpatory material. *Id.* at ¶ 63. Members of the DA's Office met with Susan Carman, Esq. another of plaintiff's defense attorneys, to discuss his motion for dismissal. *Id.* at ¶ 64. During the ensuing grand jury proceedings, which extended over several days, the County presented eighteen witnesses from

5

insurance companies and state and federal agencies. *Id.* at ¶¶ 66-74.

While the parties dispute certain aspects of the plaintiff's testimony before the grand jury, as well as the handling of certain documents, it is undisputed that the grand jury returned an indictment and that the state court issued an order finding no defect in the grand jury proceedings. *Id.* at ¶¶ 75-82. Post indictment, the DA's Office continued to meet and communicate with plaintiff's attorneys in connection with purportedly exculpatory material and discuss resolution of the case. *Id.* at ¶¶ 84-86, 88-97. Some counts were reduced, and the County extended a plea offer. *Id.* at ¶¶ 86-87.

In its 56.1 statement, the County Defendants assert that the checks by which plaintiff claims to have reimbursed insurance companies for duplicate amounts paid were backdated as proven by the postmarks on the mailing envelopes in which they were sent. *Id.* at ¶ 57. Plaintiff purports to dispute this assertion, contending that there was "no testimony—other than leading inquiries—and no foundation . . . that the checks at issue were in the envelopes offered by the prosecution . . . ." *Id.* However, the only evidence cited by plaintiff in support of this purported disputation is a grand jury transcript. Jones Decl. Ex. 23, DE 114-23. That transcript contains testimony supporting the claimed backdating; in response to questioning by ADA Weiss, an insurance company representative testified as follows:

Q: Did there come a time when UnitedHealthcare received a refund?

A. Yes.

Q. -- for the claim that is in Evidence as 67A?

A. Yes.

Q. Please read for us the date of the check.

A. January 10, 2011.

> Q. As part of the exhibit, is there a copy of envelope that the check came in?
>
> A. Yes, there is.
>
> Q. Please read for us the postmark on the envelope .
>
> A. April 8, 2013.
>
> Q. Is it your testimony that the check was dated two years prior to mailing?
>
> A. Yes.
>
> Q. Please read for us what Exhibit 67B shows as who sent the check.
>
> A. Philip M. Rafiy, M.D.

Jones Decl. Ex. 23 at 51-52. Thus, plaintiff fails to effectively dispute this assertion, which will be accepted as admitted for the purposes of this motion. Notably, the date of mailing of the back-dated refund check was after the service of a subpoena on plaintiff's business.

Additional ineffectively disputed facts arise concerning the involvement of former DA Rice in this case. Pl.'s 56.1 Counterstatement ¶¶ 113-120, 123. The County Defendants set out clear assertions of fact, supported by admissible evidence, reflecting that factually Rice was uninvolved in the investigation, indictment, arrest or prosecution of the plaintiff. *Id.* While plaintiff's counsel offers legal theories as to DA Rice's responsibility for these actions, no admissible evidence is offered supporting any personal involvement in any of these actions. Thus, these assertions, though nominally disputed, are accepted as facts for the purposes of this motion.

In any event, in November 2014, plaintiff was acquitted of all charges following a criminal trial. *Id.* at ¶ 107.

## STANDARD OF REVIEW

The instant motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor,* 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 F. App'x. 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

## DISCUSSION

Many of plaintiff's assertions aim to establish that the investigation and prosecution conducted by the County Defendants was negligent, incomplete or misguided. *See, e.g.*, DE 1 at 4 ("a certain amount of ineptness may also color the Defendants' concerted actions"); Pl.'s Br. 3, DE 119 (decrying "faulty investigation"); *id.* at 5 (criticizing "focus" of investigation and failure to take certain investigative steps); and *id.* at 8 (use of "incomplete spreadsheets"). Indeed, plaintiff's counsel expressly acknowledges that "[m]any claims herein stem from [County Defendants'] investigatory failures. Defendants failed to procure, review and/or comprehend [evidence] revealing that its prosecution was not warranted." *Id.* at 11. Of course, such assertions do not arise to the level of a cognizable claim. As the undersigned has previously observed:

> In some ways, plaintiff's assertions concerning the absence of evidence appear to suggest a theory of negligence in the investigation and prosecution of plaintiff. *See, e.g.* DE 24 at 8 (complaining that defendants "subjected [plaintiff] to an utterly baseless criminal prosecution"). However, "there is no cause of action under New York law sounding in negligent prosecution." *Bennett v. Brooklyn Criminal Court*, No. 16-CV-5111 (CBA) (LB), 2016 WL 7494862, at *3 (E.D.N.Y. Dec. 29, 2016) (citing *Coleman v. Corp. Loss Prevention Assoc., Inc.*, 724 N.Y.S.2d 321, 322 (2d Dep't 2001) ("There is no cause of action in the State of New York sounding in negligent prosecution or investigation.")); *see Antonious v. Muhammad*, 673 N.Y.S.2d 158, 159 (2d Dep't 1998) (same).

8

*Dave v. Cty. of Suffolk*, No. 15-CV-3864(JMA)(GRB), 2017 WL 2414649, at *7 (E.D.N.Y. June 2, 2017). Judge Amon has explored these issues, noting:

> Although plaintiff names the Brooklyn Criminal Court as the only defendant in his complaint, the Court liberally construes his complaint to include allegations that the judge, prosecutor, and Rikers Island officials violated his constitutional rights—first by detaining him on another person's warrant and then twice transporting him to the Brooklyn Criminal Court on an indictment against a different Ryan Bennett. It took three court appearances before the error was corrected. The Court construes his allegations as a claim for negligent prosecution. However, a negligent act of an official causing injury to life, liberty, or property does not violate the United States Constitution. *Daniels v. Williams*, 474 U.S. 327, 328-31 (1986) ("We conclude that the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty, or property."); *see also Salim v. Proulx*, 93 F.3d 86, 92 (2d Cir. 1996) ("[A] claim that a state actor acted negligently does not state a deprivation of constitutional rights."). Accordingly, absent sufficient factual allegations that the intentional or reckless conduct of a state official caused the plaintiff's injury, a complaint is not cognizable under § 1983. *See D.S. v. City of Peekskill*, 581 Fed. Appx. 65, 66 (2d Cir. 2015) ("So to survive a motion to dismiss, [plaintiff] must plausibly allege that defendants violated his constitutional rights intentionally—not just negligently."). Here, plaintiff does not allege that the judge, prosecutor, or Rikers Island officials acted intentionally, and the complaint sets forth no allegations which would give rise to an inference that any individual involved acted intentionally. Plaintiff has therefore failed to state a claim under § 1983. To the extent that plaintiff has asserted a state law claim for negligent prosecution, that claim must also fail as there is no cause of action under New York law sounding in negligent prosecution. *See, e.g.*, *Coleman v. Corp. Loss Prevention Assoc., Inc.*, 724 N.Y.S.2d 321, 322 (App. Div. 2001) ("There is no cause of action in the State of New York sounding in negligent prosecution or investigation."); *Antonious v. Muhammad,* 673 N.Y.S.2d 158, 159 (App. Div. 1998) (same). Therefore, plaintiff's complaint is dismissed for failure to state a claim on which relief may be granted because it only alleges negligent conduct, not a constitutional violation.

*Bennett v. Brooklyn Criminal Court*, No. 16-CV-5111 (CBA)(LB), 2016 WL 7494862, at *3-4 (E.D.N.Y. Dec. 29, 2016).

On this motion, County Defendants seek summary judgment as to numerous causes of action, based on the undisputed facts set forth above. In some instances, it is unclear which of the twenty separate arguments proffered by defendants are intended to each of the twelve pending counts. Furthermore, in many instances, plaintiff's counsel appears to reflexively oppose these

9

challenges, even when the case law does not support its position.

Against that backdrop, the undersigned addresses these arguments in turn:

i. Claims against the DA's Office

County Defendants assert that the DA's Office is not an entity subject to suit. "Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002)(collecting cases); *see also Adames v. Cty. of Suffolk*, No. 18-CV-4069(JS)(SIL), 2019 WL 2107261, at *2 (E.D.N.Y. May 14, 2019) (holding same). Plaintiff offers no real response to this argument, and therefore summary judgment should be granted as to this defendant.

ii. *Monell* Claims against the County

County Defendants seek judgment as to any *Monell* claims based upon the absence of colorable claims of a policy or custom. As the undersigned has previously held:

> A municipality may not be held liable under Section 1983 for alleged unconstitutional actions committed by its employees solely on the basis of respondeat superior. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–91 (1978). Rather, "to hold a municipality liable in such an action, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (internal quotation marks and citation omitted); *see also Hartline v. Gallo*, 546 F.3d 95, 103 (2d Cir. 2008). A plaintiff can establish the existence of a municipal policy or custom by showing: (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge and acquiescence can be implied on the part of the policy making officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of

10

> those who come in contact within the municipal employees. *Sulehria v. City of N.Y.*, 670 F.Supp.2d 288, 320 (S.D.N.Y. 2009); *see also Davis v. Lynbrook Police Dep't,* 224 F.Supp.2d 463, 478 (E.D.N.Y. 2002).
>
> More specifically in the context of improper police conduct, the Circuit has held, in denying a motion to dismiss, as follows:
>
>> The Supreme Court has made clear that § 1983 does not subject municipalities to liability whenever municipal employees go astray. It is only when the municipality itself wreaks injury on its citizens that municipal liability is appropriate. Here, plaintiff Walker has catalogued a host of misdeeds by city employees that led to his wrongful imprisonment. Some of these misdeeds relate to such basic norms of human conduct-the duty not to lie or persecute the innocent-that in the ordinary case a municipal policymaker need not expend precious resources on training or supervision but can instead rely on the common sense of her employees. However, in this case discovery may reveal a pattern of misconduct sufficient to turn such apparently reasonable reliance into deliberate indifference. In that event, liability may fairly be laid at the City's doorstep. *Walker v. City of New York*, 974 F.2d 293, 301 (2d Cir.1992).

*Charles v. Cty. of Nassau*, No. CV11-2709 (MKB)(GRB), 2015 WL 10457215, at *7–8 (E.D.N.Y. Feb. 20, 2015), *report and recommendation adopted*, 116 F. Supp. 3d 107 (E.D.N.Y. 2015).

Here, the County contends—after the completion of discovery—that plaintiff has failed to establish, or even allege, any of the predicates for *Monell* liability. Def.'s Br. 5, DE 116. In response, plaintiff seeks to pursue a cause of action—which has not been previously alleged—based on the notion that the ADAs Weiss and Peress were, in fact, policymakers for the County. Pl.'s Br. 8. However, the decisions at issue are limited to the question of the sufficiency of the evidence to proceed with a single criminal prosecution. Such a theory has been rejected in the context of similar allegations:

> Here, the only allegedly wrongful conduct in which Plaintiff claims the assistant district attorney engaged occurred in the context of the assistant district attorney's prosecution of Plaintiff. (*See* Third Am. Compl. 8 ("The Dutchess County [assistant district attorney] suborn[ed] the witness Varney, telling the witness Varney to lie under oath, to change the ... testimony [that] [Varney] had just

11

> given.").) Put simply, the complained-of conduct was "action[ ] . . . undertaken in the prosecution of a criminal case," which "cannot be said to represent the actions of a policymaker responsible for a delineated policy that caused a constitutional deprivation." *Peterson,* 469 F.Supp.2d at 169–70. What is more, "Plaintiff has not [even] alleged that [the assistant district attorney] had any policymaking role in the district attorney's office." *DeJean*, 2008 WL 111187, at *4.

*Hudson v. Cty. of Dutchess*, 51 F. Supp. 3d 357, 369 (S.D.N.Y. 2014).

The only factual assertion relied upon by plaintiff in support of this claim is the subjective assessment by his defense counsel in the criminal case that the ADAs "had no desire to hear exculpatory material," though the undisputed facts reveal that the ADAs repeatedly met and communicated with defense counsel for precisely this purpose. Pl.'s Br. 8. The Second Circuit has held that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61–62 (2d Cir.1998) (alterations omitted). The filings before the Court clearly limit the decisions at issue to a particular criminal case, which cannot be reasonably construed as a policymaking decision.

Even assuming, *arguendo*, that the ADAs Weiss and Peress could be construed as policymakers, the complaint is devoid of any allegation concerning a municipal policy or practice, and the time to amend the complaint has long since expired. *See generally* DE 1. Plaintiff may not amend its complaint through its response to a summary judgment motion. *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint"). The failure to properly allege or support *Monell* claims means that summary judgment is warranted in favor of Nassau County.[3]

---

[3] To the extent that County Defendants argue that the official capacity claims are duplicative of any *Monell* claims, the determination that no *Monell* claims have been properly brought moots this argument.

12

      iii.      Official Capacity Claims

As the undersigned has previously noted:

> As the Second Circuit has explained, "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (internal quotation marks and citation omitted); *see Feerick v. Sudolnik*, 816 F. Supp. 879, 887 (S.D.N.Y.) ("When the [district attorney's office] makes [prosecution-related] decisions, it is acting in a quasi-judicial capacity and thus is representing the state, not the county. Thus, the 11th Amendment protects the [district attorney's office] from Section 1983 liability while it acts as a state representative"), *aff'd* 2 F.3d 403 (2d Cir. 1993); *see also Schiff v. Suffolk County Police Dep't,* No. 12-CV-1410 (JFB) (AKT), 2015 WL 1774704, at *6 (E.D.N.Y. Apr. 20, 2015) (when making a decision to prosecute, "a district attorney's office acts as a quasi-judicial state actor . . . and is therefore immune from Section 1983 liability under the Eleventh Amendment"). Therefore, "a district attorney faced with a suit for damages stemming from acts taken in his official capacity . . . is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ferguson v. Mastro*, No. 12 Civ. 4028 (BMC) (LB), 2012 WL 3637462, at *3 (E.D.N.Y. Aug. 22, 2012) (internal quotation marks and citations omitted); *see Barreto v. County of Suffolk*, 455 Fed. Appx. 74, 76 (2d Cir. 2012) (holding the Suffolk County District Attorney's Office is "not an entity capable of being sued") (citation omitted); *see also Conte v. County of Nassau*, No. 06-CV-4746 (JFB) (ETB), 2008 WL 905879, at *1 n.2 (E.D.N.Y. Mar. 31, 2008) (dismissing claims against the Nassau County District Attorney's Office because the entity lacks the capacity to be sued); *Brown v. City of New York*, 2013 WL 3245214, at * 11 (E.D.N.Y. June 26, 2013) (dismissing official capacity Section 1983 claims against the Queens District Attorney as barred under the Eleventh Amendment); *Eisenberg v. District Attorney of the County of Kings,* 847 F. Supp. 1029, 1035 (E.D.N.Y. 1994) (dismissing official capacity Section 1983 claim against the King County District Attorney on Eleventh Amendment grounds).

*Burris v. Nassau Cty. Dist. Attorney*, 2017 WL 9485714, at *4 (E.D.N.Y. Jan. 12, 2017), *report and recommendation adopted*, 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017).

And such is the case here. To the extent that the "official capacity" claims are asserted against Rice and the ADAs, the Eleventh Amendment bars such an action. *Cf. Ying Jing Gan*, 996 F.2d at 536. To the same extent, the Eleventh Amendment bars an official capacity suit

against the DA's investigator. *See Seitz v. DeQuarto*, 777 F. Supp. 2d 492, 499 (S.D.N.Y. 2011) ("Indeed, the Eleventh Amendment bars Section 1983 damages suits against both state governmental bodies and officials. . . . Thus, both the State Police (a governmental subunit of the State of New York) and the Investigators, in their official capacities, are immune from the [plaintiff's] suit.").

Plaintiff's reliance on *Ex parte Young*, 209 U.S. 123 (1908) is entirely misplaced because, among other things, plaintiff seeks monetary damages, not injunctive relief. *Seminole Tribe of Fla. v. Fla.,* 517 U.S. 44, 73 (1996) ("since our decision in *Ex parte Young*, we often have found federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to end a continuing violation of federal law"). Thus, summary judgment should be granted to defendants as to all "official capacity" claims.

      iv.      Individual Claims against Former District Attorney Rice

Regarding the individual capacity claim purportedly asserted against DA Rice, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks and citations omitted); *see, e.g.*, *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"). In this case, no evidence has been proffered that DA Rice had personal involvement in this matter, and the undisputed facts suggest precisely the opposite. Therefore, summary judgment should be granted as to all claims against defendant Rice.

      v.      Absolute and Qualified Immunity

On this motion, County Defendant invoke both absolute and qualified immunity in support of their motion. On the question of absolute immunity, the parties are agreed that the prosecutor defendants are shielded from immunity related to actions that are prosecutorial in nature, but not for investigatory or administrative functions. *See* Pl.'s Br. 11. However, plaintiff fails to identify any actions by the ADAs Weiss and Peress that were in any way investigative or administrative. *See, e.g.*, *id*. (discussing only actions by Investigator Walsh). Thus, it appears that the prosecutorial defendants are entitled to absolute immunity from the claims here.

As to qualified immunity, the Second Circuit has held:

> When a defendant officer charged with violations of federal constitutional rights invokes qualified immunity to support a motion for summary judgment, a court must first consider a threshold question: Do the facts, viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right? If the answer to this question is no, "there is no necessity for further inquiries concerning qualified immunity."

*Walczyk v. Rio,* 496 F.3d 139, 154 (2d Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court has since modified the *Saucier* test to give district courts latitude in changing the order of its two prong test. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Nevertheless, "[i]n deciding qualified immunity, courts ask whether the facts shown [i] 'make out a violation of a constitutional right,' and [ii] 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" *Winfield v. Trottier*, 710 F.3d 49, 53 (2d Cir. 2013) (quoting *Pearson*, 555 U.S. at 223).

The problem here is, though plaintiff gives lip service to the standard, he fails to identify any constitutional right allegedly violated by the conduct at issue. For example, though plaintiff

15

cites *Brady v. Maryland*, 373 U.S. 83 (1963), for the notion that the prosecution's failure to provide exculpatory evidence upon request violates a constitutional right, the record contains no indication that such a failure transpired.  *See* Pl.'s Br. 12-13.

    Viewed in a light most favorable to the plaintiff, only one incident of concern is raised: the disputed fact as to whether Investigator Walsh made arguably untoward comments to a potential witness relating to a desire to "lock up" the plaintiff and "take his license away," characterizing him as "pushing medications" or "ripping off insurance companies."  *Id.* at 11, 15.  Even assuming such comments were made, plaintiff offers no evidence that such comments affected the evidence presented in the case.  Indeed, plaintiff's counsel characterizes these statements as an "*attempt[]* to coerce" patient witnesses, yet fails to offer any evidence that such attempt had any effect on the proceedings, or that patient witnesses provided testimony that was in any way damaging to the plaintiff.  *Id.* at 11, 15 (emphasis added).  Moreover, the conduct identified does not appear to violate any clearly established constitutional right, nor has any such right been identified.  *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 66 (2d Cir. 1999) ("If the complaint does not allege a cognizable federal claim, the defendant is entitled to have his qualified-immunity motion granted promptly as a matter of law").

    Thus, it appears that County Defendants are shielded by absolute and qualified immunity, and summary judgment should be entered on all individual federal claims.

**The State Law Claims**

A federal court may decline to exercise supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(c).  *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 726 (2d Cir. 2013).  The Second Circuit has held that "in the usual case in which all

federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 727; *see also Long Island Thoracic Surgery, P.C. v. Bldg. Serv. 32BJ Health Fund*, No. 17-CV-163(SJF)(AYS), 2019 WL 5060495, at *3 (E.D.N.Y. Oct. 9, 2019); *Smalls v. Cty. of Suffolk*, No. 14-CV-4889 (SJF)(AKT), 2019 WL 4038742, at *17 (E.D.N.Y. Aug. 27, 2019); *Eliya, Inc. v. Kohl's Corp.*, No. CV 15-2123(JFB)(GRB), 2016 WL 929266, at *8 (E.D.N.Y. Feb. 22, 2016), *report and recommendation adopted*, 2016 WL 929321 (E.D.N.Y. Mar. 9, 2016).

Having recommended that summary judgment be granted as to the federal claims, the undersigned respectfully recommends that the Court decline supplemental jurisdiction over the state law claims based on the factors of judicial economy, fairness, and comity.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that summary judgment be GRANTED as to the federal claims, and the Court decline to exercise supplemental jurisdiction over the state law claims.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for

filing objections. **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals.** *Meija v. Roma Cleaning, Inc.,* No. 17-3446, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision."); *cf. Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* review or any other standard, when neither party objects to those findings"). This is particularly true, where, as here, a party has been "warned of the consequences of not objecting to the Magistrate's findings." *Meija*, 2018 WL 4847199, at *1.

Dated: Central Islip, New York
         November 13, 2019

                                              /s/ Gary R. Brown
                                              GARY R. BROWN
                                              United States Magistrate Judge